MORRIS *v*. STATE.

(Division A. June 11, 1923.)

[96 South. 470. No. 23502.]

Appeal from circuit court of Monroe county.

HON. C. P. LONG, Judge.

Mrs. May Morris was convicted of murder, and she appeals. Affirmed.

*Paine & Paine,* for appellant.

The court erred in refusing to instruct the jury to return a verdict of not guilty for the reason that the state failed to prove the *corpus delicti.* Did the state make out such a case as would require the appellant to offer testimony? Did the state prove that Hugh Morris came to his death by poison administered criminally by the appellant? This case is made out entirely by circumstantial evidence, if at all. No one testified that they saw Mrs. Morris or Turman give any poison or place any poison in the food or medicine. Only one doctor saw Morris after he was stricken and that was just a few minutes before his death; and this doctor's statement is the only testimony that tends to show death by poison. This doctor attempted to give the symptoms upon which he based his opinion but did not show that the dying man exhibited the most pronounced symptom of strychnine poisoning, to-wit, the *risus sardonicus* or "devil's grin." This doctor admitted that he had never treated or never had seen any other person dying from strychnine poisoning. He did finally state that he had seen the effect of strychnine in several cases but not in any cases resulting fatally. Shall this woman's life be spent in the penitentiary on the opinion of a doctor who failed to notice or who testified that the most distinguishing symptom of strychnine poisoning was lacking? Do doctors ever make mistakes in diagnosing diseases and the effects of poison? To ask this question is to answer it. This witness, the doctor, relied entirely for his opinion on the convulsions which seized the man before his death. And yet it is proven in this record that convulsions accompany death from acute Bright's disease (uremic poison-

ing), and also in cases of tetanus and some as a result of arsenical poisoning.

It is true the doctor testified that this was a peculiar kind of convulsion with which Morris was suffering, but he simply gave his opinion as to the cause of the convulsion and this opinion was not based on a laboratory examination of Morris' blood, or his stomach; without which kind of an examination no statement could be made that as a matter of proven facts Morris died of strychnine poisoning. The record is full of testimony that the deceased had for a long time been suffering from kidney complaint, and that he had been treated and had taken medicine for it, and that on the very night of his death was taking medicine for this trouble. Morris had been drinking great quantities of Jamaica Ginger and the court knows that any form of alcohol is very bad for any form of kidney trouble; it is highly probable and possible that the Jamaica Ginger which he drank that day so affected his kidneys and so aggravated the Bright's disease, with which he was suffering, that it brought on an acute attack of uremic poisoning, which is a result of Bright's disease; if he did have uremic poisoning the convulsions which he had prior to his death could have been mistaken by the doctor for convulsions following strychnine poisoning.

The most damaging testimony to the state's case is the testimony of the state chemist, Dr. Hand, of the A. & M. College, who analyzed the contents of the stomach, and parts of the stomach itself, and the food and coffee which Morris was eating when he was seized with his first pains. Dr. Hand is positive that no strychnine was in the stomach or its contents or in any of the food, the coffee or the snuff. The state tries to avoid the crushing effect of this testimony by saying it is possible that the blood may have absorbed the strychnine so that no trace would have been left. That is possible, but not probable under all the facts in this case. The doctors testified that the amount of strychnine Morris got, if any, must have been the exact

amount necessary to have killed him and no more, in order for every bit of it to have been absorbed by the blood. That it would be very difficult to give a man the exact amount necessary to kill him, and not give more than necessary so that some would not be absorbed but would be left in the stomach.

We are constrained to assert that the state failed to prove that Morris died of poisoning and that it was given to him criminally by Mrs. Morris. On the nature of circumstantial evidence, see, *Sorrells v. State,* 94 So. 209. The case attempted to be made out by the state presents a theory so preposterous that it staggers belief. The idea that any same woman would go to a drug store and openly buy strychnine and charge it to her husband's account and then go and give it to him that same night or have it given to him, is unreasonable. She had bought strychnine on two other occasions and also had it charged to her husband. Does this indicate the act of a woman who was trying to murder her husband? Would it not rather show that the strychnine was bought and used for the purpose she and her children said it was, to-wit: to poison rats? It is shown that appellant and Mrs. Anglin, the other state witness, were on bad terms. Is it reasonable that appellant would have told all this tale to this woman if she was preparing or trying to murder her husband? The tale of Mrs. Anglin will not bear inspection. Appellant is shown to have lived with Mr. Morris for over twenty years and raised a large family and that they lived in as good accord as any. Morris was earning a good living and working at a steady job. Two of the girl children were growing up into young womanhood and every reason existed why the family should not be disrupted and torn asunder by any such a horrible crime as the murder of the husband and father who was furnishing the means upon which the family subsisted. Was every other reasonable theory than that of guilt excluded by the evidence? We earnestly submit it was not.

*J. H. Sumrall,* Assistant Attorney General for the State.

Hugh Morris, the deceased, was the husband of the appellant Mrs. May Morris, and was employed as night engineer at the power house in the city of Aberdeen, Mississippi. Some two or three weeks before the death of Hugh Morris, one Mason Turmon became a boarder in the home of Hugh Morris and appellant, having been a friend and acquaintance of the family for a number of years. After witness Turmon had been an inmate of the home of the deceased and appellant for a week or two, Turmon claims to have become intimate with appellant. She visited his room at night, and he claims that appellant also confided to witness Turmon her desire to kill her husband, and on the morning before the death of deceased, appellant offered witness Turmon strychnine to be placed in such drink as deceased might procure while on a trip contemplated by witness and deceased. After deceased and witness Turmon reached the home of appellant in the afternoon, appellant went to town and purchased five grains of strychnine, having previously purchased similar amounts on November 28th and December 2nd. After reaching home with the strychnine appellant went into the kitchen to prepare a lunch for her husband, the deceased, which he was in the habit of carrying to his work at night.

At about 7 P. M. on the night of the death of deceased, witness Turmon went to the plant where deceased worked and carried some "Balsam Copabia," a medicine which deceased had requested witness to get for him "for his kidneys," and while at the plant, witness and deceased each took a dose of the medicine, same being taken in capsules. A short time after witness Turmon left the plant, deceased ate his lunch which had been prepared by his wife, appellant, and soon after eating his lunch he began to complain of being very sick. He was carried to the office of Dr. Boyd, where he died with convulsions in five or six minutes. Dr. R. M. Boyd, introduced by the state testi-

fied that in his opinion deceased came to his death by strychnine poisoning. Dr. J. M. Acker, Jr., introduced by the State testified that, from the symptoms described by Dr. Boyd, in his opinion deceased died of strychnine poison. There was undisputed proof of the violent death of deceased and the expert testimony introduced by the state through the two local physicians, was sufficiently positive to leave no doubt of the fact that the deceased came to his deah by strychnine poisoning.

Various works on Medical Jurisprudence, which fully describe in detail the unmistakable symptoms of strychnine poisoing enable a mere layman to recognize the symptoms testified to by state witnesses as being unquestionably those of strychnine poisoning. See 4 Witthouse & Becker Medical Jurisprudence, page 1031, also 2 Wharton &' Stille's Medical Jurisprudence, sections 744 and 750. In the foregoing authorities it will also be noted that, a *postmortem* examination fails to disclose the presence of strychnine in the stomach as often 'as it is found even in cases of known strychnine poisoning.

The evidence is amply sufficient to prove that deceased died of strychnine poisoning, under circumstances and conditions that indicate that appellant was responsible for the instrumentality through which same was administered. In reply to that part of the brief of counsel for appellant in which he quotes from *Sorrells* v. *State,* 94 So. 209, I respectfully submit that the case cited has no application to the facts in the case at bar, since there is no such dearth of proof in the instant case as existed in the *Sorrels case, supra,* but on the other hand the proof is ample to supply every necessary element, and exclude every other theory.

Argued orally by *Thos. F. Paine* for appellant and *J. H. Sumrall,* Assistant Attorney-General for the State.

HOLDEN, J., delivered the opinion of the court.

The appellant, Mrs. May Morris, was convicted on a charge of murdering her husband by administering poison to him, and, the jury failing to agree on the punishment, she was sentenced to life imprisonment in the penitentiary, from which judgment she appeals.

The principal ground urged for reversal, and the only point which merits serious consideration, is that the testimony offered by the state was insufficient to support the verdict of the jury, in that the state failed to show the deceased came to his death by poison, and that, if strychnine poison caused his death, then it was not shown that the appellant gave him the poison, or caused it to be given to him by another person.

We have carefully and patiently reviewed the testimony in the record, which is largely circumstantial, and, without stating the evidence in detail, we have reached the conclusion that the proof in the case well warrants the finding of guilt by the jury.

The judgment of the lower court, therefore, is affirmed.

*Affirmed.*